Good morning and may it please the Court, Elizabeth Harris on behalf of the State of  This case is about ensuring a fair outcome for non-parties to a consent decree. When Washington was denied its day in court by the dismissal below, it was denied the chance to protect its interests in the state's environment and to secure a remedy that would clean up polluted waters in violation of both Supreme Court and Ninth Circuit precedent. Could you please explain the difference between a government enforcement action and a government citizen suit? Are they different? Yes, they are, Your Honor. Traditional government enforcement action would be done by the EPA or perhaps by a state agency with delegated authority. But what the state is doing here is a citizen suit, a separate route that's provided, and the state in this action is acting as any other citizen suit plaintiff would, whether it would be Okanagan Highlands Alliance or the Sierra Club or any other group. So if you conceded below, which you did, that Sierra Club would be precluded, then you should as well. Is that correct? I'm sorry, could you repeat the question? Below in the district court, the State of Washington conceded that Sierra Club would be precluded, and if you stand in the shoes of the Sierra Club, then you would equally be precluded, correct? I disagree with that, Your Honor. That was about if the Sierra Club tried to file a suit after entry of the consent decree in this case, whereas Washington, because it was in a consolidated case with Okanagan Highlands Alliance, filed its suit contemporaneously with OHA and litigated it within a consolidated action over a period of years. And so that changes the claim preclusion analysis with respect to the state here. But if the Sierra Club were to join the suit after Washington and the OHA consent decree wasn't a final judgment, the Sierra Club would be able to join or not? If the Sierra Club were able to join before entry of the consent decree? Which, no. You said, I understand you say a consent decree was not a final judgment, right? It was not a final judgment with respect to the whole case. It was a final judgment with respect to OHA, but not.  But if Sierra Club wanted to join, why wouldn't it be permitted to join on the same grounds as the state staying in the suit? Because that would be taking an action subsequent to entry of the consent decree. But I don't understand the difference, because if a consent decree is not a final judgment, why then would the Sierra Club be precluded? Because it was not part of the initial consolidated action that occurred before entry of the consent decree. I think that's the distinction here. And what's the best support you have for that? That in the Arizona v. California Supreme Court's case that says when you have a consolidated action, claim preclusion doesn't apply strictly. You turn to the principles of claim preclusion to determine whether or not somebody is claim precluded. And here, those principles don't support dismissal of the state's case. So if the state had filed after the OHA consent decree, the state would equally be precluded? I think so, Your Honor. And you could follow a standard claim preclusion analysis there under the Taylor factors for non-party preclusion. But that's not what happened here. The state was filed contemporaneously with OHA. So let me get this straight. So we got two separate citizen suits, one filed by the environmental organization and one filed by the state. They are then consolidated. The environmental organization then settled separately without involving the state. Correct. And your argument is that you would not have settled on these terms? Yes, Your Honor. The state is looking for the opportunity to seek additional relief. And what is the additional relief? We're looking for additional relief to hold Kinross Gold USA Incorporated financially liable for performing the remedial actions at the site. We're looking for the opportunity to argue that both Crown and Kinross should implement remedial actions at the site that actually clean up the pollution that our experts have identified where the consent decree now is more focused on investigations. As I read the consultant's consent decree, it doesn't really require the defendant to do very much. It requires a plan to create a plan. It requires a significant amount of investigation given the complexity of the site. But it doesn't seem that there's a whole lot that's mandatory once the investigation is completed. Yes, you're right, Your Honor. There's an obligation to create a plan to clean up the site, but the consent decree itself does not specify which actions Crown and Kinross can take to actually remove the pollution at the site. And the state's argument is that if we, the state, had been consulted and had been asked to settle the suit that we had that was consolidated, we would never have settled on these terms. That's right, Your Honor. We were looking for additional actions that our experts have identified that don't require additional investigation to be implemented and actually remediate part of the site. And that goes, of course, to the remedy, but in terms of your interest in OHA and whether they're actually aligned within the meaning of the third Taylor exception, I believe you've asserted that Washington's interests are necessarily broader. And is that solely because Washington is a sovereign? No, Your Honor. I would say that Washington's interests are broader, but I think what's more important is that they're different. How are they different? The state has an interest in ensuring clean water for its citizens to be able to drink. The state owns all the wildlife and owns all the waters here, whereas — It just seems a stretch to say that out in the Puget Sound and the San Juan Islands and the birds are somehow within this broader interest, which have nothing to do with this lawsuit. How do you square that? Well, I think that even in the area around the Buckhorn Mountain Mine, the state has different interests than the members of OHA. No, I mean — I'm sorry, Your Honor. But I'm trying to really square what you said in your brief, which was, oh, well, we have this interest in the whole state and all the fish and all the wildlife. But now you're saying, really, we're looking at the geographic area surrounding this lawsuit in the Okanagan. Well, I think our interests in the area around the mine flow from those broader interests throughout the whole state. And where impacts from the mine, the contamination that's escaping from the mine flows along these waterways into, you know, the Columbia and eventually the ocean, the state also has an interest in that. But here's a — I'm not sure this is fatal to your case, in my view, but it sounds to me you're making arguments that the state is here suing as the state, but that's not what the state's doing. The state is suing here as a citizen. And I think the state here, because of the suit it has chosen to bring, is indistinguishable from a citizen. I agree. The state's indistinguishable from another citizen group, but — So I don't think you can then say, but the state has special interests. You can say that the state suing as a citizen would not have settled on these terms. You could say this looks like a sweetheart deal. You can say they bought off the environmental organizations for $3 million, and this is not a settlement that we ever would have agreed to acting as a private party. But I don't think you can say that because the state has different interests, because it is a state, you can object on that ground. I see your point, Your Honor, and I think it's not that the state is a state that creates a different interest. It's just the state has different interests than OHA, in the same way that any other citizen suit plaintiffs might have different interests going on. But it seems like the interests are aligned, right? You allege basically the same violations. You sought the same relief. You might now disagree as to exactly what the settlement terms were, but that doesn't seem the question that we have to answer, right? Were your interests in the litigation aligned? Same causes of action, sought the same relief, even though may have a different standard for settlement. So how does that really impact your interests being aligned? Well, I think that our interests here, you know, as we've noted, are different, but also the interest in the relief is different. The state wants a remedy that actually addresses the pollution and removes what's there and stops more from coming out, which this consent decree provides a path to that, but doesn't actually require it. All right. Do my colleagues have any more questions or you have about 50 seconds, but we'll give you two minutes for a response. Okay. We'll give you two minutes for a rebuttal. Thank you. Okay. Thank you. Good morning. District Court ruled that two citizen plaintiffs cannot obtain double recoveries for the same violations of the Clean Water Act. This common sense outcome is amply supported by the law, including that all three elements of claim preclusion are met here. First, the state asserted the same citizen suit claim for the same violations that OHA, the citizen group did. Second, the consent decree is a final judgment with preclusive effect. And third, the state was in privity with OHA on this claim. Help me out with the privity because it seems to me we've got different interests comparing the interest of the environmental group that settled in the interest of the state that settled. We see they see that right in front of us, the state saying we would never have settled on these terms, even though this is, and I concede the point, this is a citizen suit rather than the suit state says suing as the state. So how do you, how can we say they have the same interest when the state itself denies that? Well, the test is not whether the interests are the same. The test is whether the interests are aligned. And this court has held several times that the interest of a citizen bringing a suit under the Clean Water Act is to vindicate the public's interest. It's not an individualized interest. So let's start with that, that point. And secondly, you know, when they say that they would not have entered the settlement, they had an opportunity to object to it. And that is the mechanism that's the Clean Water Act provides to address those kinds of concerns. Would that have prevented, would that have then prevented the consent decree from being entered?  I mean, this is this, this case had proceeded as a multiple plaintiff citizen case, which is the much more ordinary procedural posture. But you negotiated with the environmental group without alerting the state. The state tells you, the state learns this, and then day later, day later, the consent decree is entered. And the state had no ability to participate. Well, that's not accurate, Your Honor. This was the end of a- What's wrong with the narrative I just gave you? That the negotiations between your company and the environmental group were not revealed to the state until a day before the consent decree was entered. Is that wrong? No, because those negotiations were- Is my statement wrong? In the sense, yes, in the sense that these were negotiations that continued, that began with all three parties under the supervision of the magistrate judge for the better part of a year. When those three-party negotiations broke down, then my client was able to negotiate a settlement with the Okanagan Highlands Alliance alone. Okay, so let me make sure I understand it then. So when the negotiations among all three broke down, the negotiations with the environmental group proceeded between that group and your company? Correct, Your Honor. Then the consent decree is entered a day after the state is alerted to what happened in those negotiations? No, that's inaccurate, Your Honor. Okay, so what did happen? The consent decree was filed. There is a 45-day waiting period where it is- I'm talking about what leads up to the consent decree being filed. Okay, yes. The state was not a party to the post-mediation negotiations between my client- Did the state first learn about the consent decree agreement between your client and the environmental organization? I wasn't party to the conversations between the environmental group and the state, but I think it was a matter of days or weeks before it was lodged with the court. I think the answer is one day. Okay. And then the state had an opportunity, because that was filed as a motion to enter jointly by my client and by the environmental organization. The state had an opportunity to oppose that motion. They chose not to do so. Well, wait a minute. They chose not to do so. They had a day to do it, because the negotiations are revealed, and then the next day, the consent decree is entered. No, that's not accurate, Your Honor. This was- the consent decree was lodged- I think it is. I can go back and look, but I think that's the sequence. May I lay out the sequence? Please. The consent decree was lodged with the court with a joint motion to enter it by the environmental organization and by my clients. That triggered a 45-day waiting period where the consent decree was then reviewed by the United States Department of Justice and the EPA. Once they had a chance to weigh in, they provided their letter to the court, which is in the record, where they did not oppose- But see, I think that's the answer. You just said that 45-day window is for the EPA to decide whether it's going to object. That's not a requirement that the CWA imposes on the state to object within the 45 days. Well, the state had a period to object as well because this was filed as a motion in the lawsuit. The state could have responded with an opposition. They had a chance under the rules of the court to file an opposition brief. Why would- you know, the difficulty I have is the result of your position is that the first to settle in this consolidated suit then controls the entire suit. And that doesn't make sense to me. If you have, for example, an under-resourced plaintiff who says, you know, we're at the end of our rope financially, or otherwise, we're just going to settle with your company. Why should that preclude the other parties, like the state here? Well, as a legal matter, it precludes another party because this is a single claim, a claim on behalf of the public. Yeah, but the settlement may not be what the other party wants or other parties, if the Sierra Club had magically appeared, for example. True, and that happens fairly often, Your Honor, because there are multi-party plaintiff citizen suits and there are mechanisms and safeguards to account for that. I mean, typically what happens is the plaintiffs get together and they negotiate and they horse trade and they cooperate. In a situation where, you know, analogous to this one, where one plaintiff wants to settle and maybe another plaintiff does not, the mechanism is to object to the court and say this settlement is inadequate. It doesn't address our concerns. It is also to comment to EPA and the Department of Justice and say this settlement is inadequate and doesn't address our concerns. So just to understand your point that the state's avenue would have been to object during the 45-day period that the settlement wasn't broad enough or didn't include everything that they wanted, and then that would either upend the consent decree or it would go forward. I think they had two options. They could have, the most direct and obvious option was to file an opposition brief to the district judge and say this, don't enter this as a final judgment on this citizen claim. We don't think it's adequate. We don't think it addresses all of our concerns, et cetera. They chose not to do that. The other avenue was to go to EPA or the Department of Justice and make the same case. They chose not to do that either. Instead, Justice Department comes in and says we have no objection to this consent decree. It's sufficient to deter these violations, and the court makes the findings that were required by this court's precedent, that this settlement is fair, adequate, equitable, furthers the interests of the Clean Water Act, et cetera. But if I can return to your question before Judge Fletcher, because I think there's been some suggestion here that this settlement might have been collusive or inadequate, there's a couple of points that I think need to be made to address that potential concern. First of all, the state and the environmental organization shared the same experts. And in that years-long, year-long mediation overseen by the magistrate judge, there were numerous sessions where those experts jointly retained by the environmental organization and the state negotiated directly with the experts retained by my clients, including some sessions without lawyers present. So this was not something that was done, you know, without, you know, input of the very experts they hired. That's the first point. The second point I think that is really important to understand is this is not a site where anyone can say if you just do X, Y, and Z, these permit violations will stop tomorrow. These can't be ceased by, you know, flipping a switch or turning off a valve. These are end result requirements where the terms of this permit make my client the guarantor of water quality in surface waters and groundwaters around the site. So, you know, there's no, like, overnight solution. It's not like we're refusing to do something that we could do to bring us into compliance. In fact, nobody has suggested at any time during this multiyear case, if you just do X, Y, and Z, everything will be fine. The fact is it may never be possible to comply with this permit fully because we're measuring some kinds of background constituents, we're measuring impacts of historical mines that are off our property. There is no magic fix here, and that's why the consent decree starts with a very robust multiyear investigation to try to find out if there is, in fact, other things that can be done at the site. And the only two things that have ever been proposed, which is I think what Ms. Harris was referring to when she was standing at the podium, are remedies off of our property, which is outside the scope of the Clean Water Act. But even those, if we were to do those things, they would address a very limited subset of the exceedances at issue here. Let me ask you a question about the sixth Taylor exception. You can see that the statutory scheme doesn't expressly foreclose successive litigation by non-litigants. Well, it expressly forecloses. Well, give me the specific language in the CWA that explicitly forecloses. Okay. It expressly forecloses a citizen suit after an enforcement action is filed. Now, are you citing those two cases, the Milwaukee Rivers and the Green Forest, or what are you relying on for that? If you're going to rely on a specific statutory section, I would ask you to please cite the statute. So to answer your question directly, 33 U.S.C. 1365 subpart B is the diligent prosecution section, and that expressly forecloses a citizen suit after an enforcement action. After a government enforcement action.  Okay. But you would agree that here, where you have two citizen suits, the diligent prosecution bar doesn't expressly cover that situation, right? That's right, Your Honor. There is not an explicit statutory bar that says two citizen suits can't be asserted. And the way I read Taylor, it does require an express statutory bar. You agree with that? Well, I don't think that's entirely clear from the Supreme Court's decision. We're trying to interpret- It's a quote, expressly foreclose successive litigation by non-litigants. You don't read that as an expressly foreclosed? Well, Your Honor, it's two sentences in that opinion, and it's citing two older Supreme Court cases. I think one, which is sort of an extended footnote. I understand what Your Honor is saying. I mean, you know, we're supposed to do what the Supreme Court says, and it's a pretty clear sentence. I understand, Your Honor. I'll make two points. First, they also then provide a series of examples of the types of laws to which that kind of preclusion would apply. One of them, I believe, is a Quo Oronto action, which is a challenge to someone's qualifications to hold a public office. We looked at the Quo Oronto statute in the D.C. Code. That doesn't contain that kind of statutory bar. But more importantly- They cite bankruptcy probate proceedings. Yes, they do, Your Honor. More importantly, though, I think it's to keep in mind here, there are two, the District exceptions, the non-party preclusion to apply, and adequate representation is clearly a narrower ground that you could affirm the district court on. And that is just an opening- So you agree that the sixth one is weaker, right? Yes, Your Honor. It is. It is. There are very few cases that have applied that, and adequate representation, I mean, this is kind of a, that exception here fits like a glove. And if Your Honor would like, I can move into adequate representation. No, you're way over time. You're two minutes and 17 seconds over time. So unless my colleagues have any more questions, I'm going to thank you and go to rebuttal. Okay. Thank you very much. Your Honors, I would like to point out that Crown is adding in process to the Clean Water Act that is not written into the statute by saying that the state had an obligation to object or even to reach out to the EPA or DOJ regarding the consent decree. So why didn't the state object once this plan comes forward? Because there was no need, the state's case is not precluded under Ninth Circuit or Supreme Court case law of claim preclusion. I mean, that's a pretty risky proposition. We got a consent decree in a case with the same claim, and then the state says, oh, well, we read all the privity cases differently. So we're not even going to raise a peep in the district court. It just doesn't ring true in terms of litigation process. So basically you're saying, well, we didn't have to, so we didn't. Is that the answer? That's true, Your Honor. The Clean Water Act says that citizens who plaintiffs bring these cases on their own behalf. OHA settled its case with Crown and Kinross, and the state understood that it was going to, would have the opportunity to continue to prosecute its case. Because looking at- No, if I were the state's lawyer, and I'm not, and you weren't at that exact point, you would have said, we object to the settlement, or we think there are different remedies, but we don't feel that we have to do it in the 45-day process. But instead, the state said nothing. That just seems so odd to me. When was the first time the state raised its hand and said, oh, you know, there's a problem? After Crown and Kinross mentioned that they were going to move against the state to dismiss its case under claim preclusion principles. That was the first time we heard that the defendants intended to take this process, which wasn't clear from the face of the consent decree, which shows no intent on its face to preclude the state's case. It doesn't mention the state's case or claim precluding the state's case. The cases were consolidated. Were they consolidated simply for convenience? Were they put under the same case number? I mean, what was the nature of the consolidation in the district court? The nature of the consolidation is that they were consolidated under one case number, and we continued to litigate under that one case number for a number of years. But were they two separate cases, even though handled administratively as a consolidated case? I'm trying to figure out whether or not you were, whether we had one case or two cases. Well, Your Honor, I think that the case law in the Ninth Circuit doesn't fully address that here. And the order from the court below didn't lay out for what purposes the cases were consolidated or merged and for what purposes they stayed separate. But the point of consolidation is to merge two cases together for at least some purposes, even if they do retain their separate identity. Have the same trial date? Yes. I see. Did you have a pretrial order at that point? Yes. So when, I guess it's crowned at the November 14, 2024 hearing said the consent decree didn't dispose of the state's claims, but he believed the claims were barred by claim preclusion. Is that your first notice or when? And did you respond quickly after hearing that or what was that? The first time we heard about this was actually in an email exchange with the court. And then we had that hearing with the, with the district court judge about this, at which point the court directed Crown and Kinross to file a motion on this. And the state objected to the argument with the court in the status conference, but understood that it, there would be briefing on the issue where it would be addressed fully. Okay. Let me see if my colleagues don't have any more questions and you're over time. So thank you. Okay. All right. I want to thank all counsel for their very helpful arguments and we'll submit this case now. Okay. Thank you.
judges: McKEOWN, FLETCHER, KOH